**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| MICHAEL FROELKE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-01138 (AJT/WBP) |
| | ) | |
| MONTGOMERY MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The Froelkes filed a Motion to Compel Appraisal and to Stay this Action Pending

Issuance of the Appraisal Award. ("Motion," ECF No. 5.) By order on July 10, 2026, the Court

GRANTED the Motion, compelling an appraisal and staying this litigation. (ECF No. 14.) This

memorandum opinion further explains the Court's decision.

I.

Montgomery Mutual Insurance Company ("Montgomery Mutual") insured the Froelkes'

improved real property and personal property from fire and smoke damage, as well as for the

loss of use of their property. (ECF No. 1-2 ¶ 5.) On April 23, 2024, a fire damaged both the

Froelkes' real and personal property, and the Froelkes filed an initial claim of $97,293.40 for the

loss of certain personal property. (*Id.* ¶¶ 10, 18.) The Froelkes later supplemented their personal

property claim with an estimate of $786,475.02. (*Id.* ¶ 17.) Montgomery Mutual accepted

coverage for the claim and issued the Froelkes a partial payment of $36,087. (*Id.* ¶ 14.)

Montgomery Mutual has made no further payments under the Policy and has refused to pay the

Froelkes for their supplemental personal property claim or for their claim for the loss of the use of the real property. (*Id.* ¶¶ 14–16.) This action followed.

The Froelkes argue that their insurance policy with Montgomery Mutual (the "Policy") requires the parties to engage in a compulsory appraisal process to resolve their dispute over the "amount of loss" or the "actual cash value" of any damaged property under Code of Virginia section 38.2-2105. (ECF No. 5 ¶¶ 2–3 (quoting Va. Code § 38.2-2105).) Montgomery Mutual agrees that section 38.2-2105's appraisal process applies to value the Froelkes' "unsalvageable" personal property but contends that a large portion of the Froelkes' personal property is either not damaged or is salvageable, creating a coverage dispute. (ECF No. 10 at 3–4.)

II.

As a general rule, appraisal is a mechanism for "assuring that the insured as well as the insurer has a contractual right to a prompt and inexpensive determination of the amount of loss," but "[w]here the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property." *Aetna Cas. & Sur. Co. v. Ins. Comm'r*, 445 A.2d 14, 19 (Md. 1982); *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 470 (Mich. Ct. App. 1991). "[O]nce an insurer admits that a loss is covered under its policy, a court is statutorily mandated to order the parties to participate in [the] statutory appraisal process, as the parties do not dispute liability and only are at odds about the amount of the loss." *D Boys, LLC v. Mid-Century Ins. Co.*, 644 F. App'x 574, 578 (6th Cir. 2016). Thus, "appraisement is merely a method of ascertaining the amount of loss or damage and does not determine other issues such as liability and coverage." *Roumel v. Niagara Fire Ins. Co.*, 225 A.2d 658, 659 (D.C. 1967).

Parties trigger the appraisal process when they (1) disagree under an insurance policy or under § 38.2-2105; (2) as to the "amount"; (3) of a "loss." (ECF No. 6 at 2 (citing appraisal provision)). To determine whether the parties disagree on the amount of a loss, a court must first identify the nature of the covered loss and define what property the appraisal should measure. Although an appraiser cannot consider whether certain damages are excluded from an insurance policy's coverage, the scope of the damage—including what property was damaged and whether it must be repaired or replaced and for what cost—falls squarely within the appraiser's ambit. *See Cigna Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F. Supp. 2d 259, 269 (D. Del. 2000) (preventing appraiser from assessing damage that occurred at an office party months before the covered event); *Coates v. Erie Ins. Exch.*, 79 Va. Cir. 440 (2009) (holding that what must be replaced by an admittedly covered event is not a question of coverage); *N. Brit. & Mercantile Ins. Co. v. Robinett & Green*, 72 S.E. 668, 764 (Va. 1911) (holding whether the notice requirement is reasonable amounts to a liability question). Appraisers also appropriately evaluate which property was damaged, the cause of the loss, and the reasonableness of a plaintiff's claims. *See, e.g.*, *Metro. Apts. at Camp Spring, LLC v. Nat'l Sur. Corp.*, No. 1:14-cv-00107-AJT, 2016 U.S. Dist. LEXIS 123215, at *7 (E.D. Va. 2016); *see also Riley v. Liberty Mutual Group, Inc.*, No. 4:21-cv-113-RAJ-RJK (E.D. Va. Sept. 15, 2022), Docket Entry No. 37 (compelling appraisal as to scope of the damages caused by the covered peril).

III.

Montgomery Mutual opposes the Motion, arguing that a *coverage* dispute exists about whether certain personal property was damaged from the fire. But as discussed above, whether certain property was damaged from a covered loss is not a coverage question, and no coverage

3

dispute exists here. Coverage disputes occur when the insurer challenges overall liability, proper notice, the type of property damaged, the type of damaging event, or the policy's applicability.

For example, in *Oro Master*, the insured sought repayment for repairs to its commercial property, which sustained water damage when frozen pipes burst the sprinkler heads. *Oro Master Sub 2, LLC v. Ohio Sec. Ins. Co.*, No. 1:26-cv-01199 (E.D. Va. July 8, 2026), Docket Entry No. 1-1. The insurer asserted that the vacancy exclusion, the frozen plumbing exclusion, and the negligent work exclusion all precluded coverage under the applicable policy. *Id*. The court denied the insured's motion to compel appraisal without prejudice, holding that the court must resolve whether the loss was covered under the policy before the appraisal process could begin. *Id*., Docket Entry No. 44; *see HHC Assocs. v. Assurance Co. of Am*., 256 F. Supp. 2d 505 (E.D. Va. 2003) (holding that whether coverage was properly denied is a legal issue reserved for the court alone).

Similarly, in *Allied Property*, before ordering an appraisal, the court first resolved whether the policy's pollution or smoke exclusion applied to a claim made by an insured when a wet saw released a significant amount of concrete dust onto the insured's inventory. *Allied Prop. & Cas. Ins. Co. v. Zenith Aviation Inc*., No. 1:18-cv-00264-AJT, 2019 WL 10960567, at *1 (E.D. Va. Mar. 15, 2019). Noting the broad scope of the appraisal process, the court held that it must only consider whether the policy covers certain *categories* of property—business and personal property—and left for appraisal the amount of loss for the specific items within those categories. *Id*. at *3.

IV.

Here, Montgomery Mutual has accepted the claim and has made a partial payment. It challenges only the amount of damages covered under the Policy. The "Policy provides coverage

4

for damage to the building, to personal property, for loss of use and extra expense resulting from a covered loss, all among other coverages" and that the fire is a covered event. (ECF No. 1-2 ¶ 9 (admitted in ECF No. 3 (Answer)).) Montgomery Mutual contends, however, that the Policy does not cover many of the items listed in the Froelkes' supplemental personal property claim because these items were not sufficiently damaged in the fire. The Court disagrees, as Montgomery Mutual confuses coverage for a loss with the amount of a loss. *See Coates*, 79 Va. Cir. at *2–4 (rejecting insurer's argument that a dispute over what must be replaced and the amount of loss is a coverage question).

Montgomery Mutual admits that the fire is a covered event and that the Policy covers personal property as a class.[1] Montgomery Mutual's argument rests entirely on its belief that certain items of the Froelkes' personal property are not damaged. But whether certain items of covered property are damaged is a decision for the appraiser, who must determine the extent of the damage, including whether items of personal property have been damaged at all. *See, e.g.*, *Metro. Apts. at Camp Spring, LLC*, 2016 U.S. Dist. LEXIS 123215, at *7 (citing *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 891 (Tex. 2009) (referring the question of which shingles, if any, were damaged and whether they were damaged by the covered event to appraisers)); *Coates*, 79 Va. Cir. at *3 (finding that whether *un*damaged portions of a roof must also be replaced to fix the electrical system is suited for appraisal). The appraiser may decide that certain items of personal property were not damaged in the fire and assess no recovery for them. While such a conclusion may reduce the Froelkes' damages, it does not preclude coverage for the

---

[1] Although the record is unclear, to the extent Montgomery Mutual challenges the Froelkes' out-of-pocket expenses and damages for their loss of use of the real property, appraisal remains the appropriate remedy because Montgomery Mutual concedes that the Policy covers those categories of damages. (ECF No. 1-2 ¶ 9 (admitted in ECF No. 3 (Answer)).)

claim. Similarly, the appraiser may determine that the Froelkes have not sufficiently supported their estimate of damages. But, again, that decision relates to the amount of the loss, not whether coverage exists for it. *See N. Brit. & Mercantile Ins. Co.*, 72 S.E. 668 (referring the question of whether the plaintiff's damage claims were excessive to the appraisers).

For these reasons, the Court previously GRANTED Plaintiffs' Motion.

Entered this 3rd day of August 2026.

_____
William B. Porter
United States Magistrate Judge

Alexandria, Virginia

6